# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

<u>IN RE:</u>
**BURTON WIAND**
**RECEIVERSHIP**
**CASES PENDING**
**IN THE TAMPA**          **Case Nos.: 8:05-cv-1856-T-27MSS, et al.**
**DIVISION OF THE**
**MIDDLE DISTRICT**
**OF FLORIDA**

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court on motions to dismiss filed by Defendants in the cases listed in Appendix A (the "Motions to Dismiss" or "Motions") and the single Motion for Summary Judgment filed by the Levine Defendants. The Motions to Dismiss have additionally been considered on oral argument. Upon consideration of the parties' positions, the Undersigned **REPORTS** and **RECOMMENDS** that the Motions to Dismiss be **GRANTED in part** and **DENIED in part** and that the Levine Defendants' Motion for Summary Judgment be **GRANTED**.

## I.    BACKGROUND

The factual background and procedural history giving rise to the Motions were set forth in large part in the Undersigned's previous report and recommendation dated January 12, 2007. By way of summary and accepting the Receiver's allegations of fact to be true, beginning in the 1990s Howard Waxenberg ("Waxenberg") began operating a classic Ponzi scheme. He collected over $130 million from his victims

over time and made periodic payments to some of the victims, including Defendants herein, under the misrepresentation that their investments were generating significant returns.   Waxenberg died on May 15, 2005.

Following Waxenberg's death, the Securities and Exchange Commission (the "SEC") began an investigation and commenced an enforcement action against the Estate of Howard Waxenberg and the entities through which Waxenberg operated the Ponzi scheme, Howard Waxenberg Trading, LLC, HKW Trading, LLC, HKW Trading Fund I, LLC, and Downing & Associates Technical Analysis (n/k/a the Estate of Howard Waxenberg).  In that enforcement action, the Court appointed Burton Wiand as the Receiver for Howard Waxenberg Trading, LLC, HKW Trading, LLC, HKW Trading Fund I, LLC, Downing & Associates Technical Analysis and the Estate of Howard Waxenberg (collectively referred to as the "Receivership Entities"). Thereafter, the SEC settled its claims against the Receivership Entities and the Receiver instituted these actions on behalf of the Receivership Entities against approximately eighty victims who received money from Waxenberg prior to his death.  The Receiver's initial complaints set forth claims for unjust enrichment, disgorgement and for recovery under the Florida Uniform Fraudulent Transfers Act, Fla. Stat. § 726.101, *et seq* ("FUFTA").  Defendants in fourteen of the pending cases moved to the dismiss each count of the initial complaints.    On consideration of the previous motions to dismiss, the Undersigned issued a report and recommendation recommending dismissal without prejudice of the Receiver's FUFTA claim, dismissal with prejudice of the

Receiver's unjust enrichment and disgorgement claims and dismissal with prejudice of two of the Receivership Entities from the case entirely. On March 27, 2007, the Court adopted in part and rejected in part the Undersigned's report and recommendation. The Court dismissed without prejudice the Receiver's FUFTA claims and dismissed with prejudice the Receiver's disgorgement claims.

With respect to the Receiver's FUFTA claims, the Court found that the Receiver had failed to allege in his complaints which entities were "creditors" with "claims" against a "debtor" as required to state a claim under the statute. Regarding the Receiver's unjust enrichment claims, the Court held that it was premature to address the merits of the claims on motions to dismiss. The Court found that the Receiver had satisfied the notice pleading requirements of Fed. R. Civ. P. 8 and permitted the Receiver to pursue the unjust enrichment claims as alleged.

Additionally, the Court dismissed with prejudice the Estate of Howard Waxenberg as a party, finding that the Receiver had failed to show that the Estate of Howard Waxenberg was separate and distinct from the perpetrator of the fraud, Howard Waxenberg. Similarly, the Court dismissed Downing & Associates Technical Analysis ("DATA") as a party. However, the Court did so without prejudice to the Receiver to "plead facts, *in good faith*, showing that DATA was a separate legal entity that was injured by disbursements of its funds for unauthorized purposes." See, e.g., Wiand v. Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 63 at 15 (M.D. Fla. March 27, 2007), http://ecf.flmd.uscourts.gov (emphasis added). The Receiver was granted

leave to amend the complaints.

In his amended complaints, the Receiver has again alleged FUFTA claims and unjust enrichment claims[1] against Defendants on behalf of the Receivership Entities, including DATA but excluding the Estate of Howard Waxenberg.  Under each theory, the Receiver seeks to recover what he has dubbed the "false profits" obtained by Defendants, the "return of principal" payments received by Defendants and/or the "return of principal" payments Defendants received in excess of their *"pro rata"* share. In some cases, the Receiver has also asserted unjust enrichment and FUFTA claims to  recover "other transfers,"[2] or transfers from specific accounts.  The amounts paid to each Defendant are listed in spreadsheets attached to and incorporated in the amended complaints.

## II.    MOTIONS TO DISMISS

In their Motions, Defendants contend DATA must be dismissed as a party

---

[1]

In some cases, the complaints that give rise to the Motions are second amended complaints.  Wiand v. Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 65 (M.D. Fla. April 26, 2007); Wiand v. Gruen, 8:06-cv-610-T-27MSS, Dkt. 22 (M.D. Fla. May 14, 2007); Wiand v. Cottage Development, 8:06-cv-615-T-27MSS, Dkt. 20 (M.D. Fla. May 14, 2007); Wiand v. Greenberg, 8:06-cv-617-T-27MSS, Dkt. 24 (M.D. Fla. May 14, 2007); Wiand v. Isroff, 8:06-cv-623-T-27MSS, Dkt. 21 (M.D. Fla.  May 14, 2007); Wiand v. Waxenberg, 8:06-cv-708-T-27MSS, Dkt. 21 (M.D. Fla. May 14, 2007); Wiand v. Rakov, 8:06-cv-832-T-27MSS, Dkt. 20 (M.D. Fla. May 14, 2007); Wiand v. Stevenson, 8:06-cv-837-T-27MSS, Dkt. 23 (M.D. Fla. May 14, 2007); Wiand v. Rubin, 8:06-cv-1048-T-27MSS, Dkt. 17 (M.D. Fla. May 14, 2007).

[2]

Wiand v. Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 65 (M.D. Fla. April 26, 2007); Wiand v. Dimont, 8:06-cv-614-T-27MSS, Dkt. 22 (M.D. Fla. May 2, 2007); Wiand v. Vinogrand, 8:06-cv-823-T-27MSS, Dkt. 23 (M.D. Fla.  May 2, 2007).

because the Receiver has failed to demonstrate that it is a separate legal entity apart from Waxenberg.  Additionally, Defendants each contend the amended complaints must be dismissed for the following reasons: (1) the Receiver has failed to state a claim under FUFTA and (2) the Receiver has failed to state a claim for unjust enrichment.  Some Defendants raise arguments peculiar to their cases which the Undersigned will address in turn after addressing the arguments raised collectively.

## III.   STANDARD OF REVIEW

The threshold for surviving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a low one.  Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983).  A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1968-69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).   Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. (citing Sanjuan v. American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994)).   In evaluating the sufficiency of a complaint in light of a motion to dismiss, the pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff.  Quality Foods, 711 F.2d at 994-95.  However, the court should not assume that the plaintiff can prove facts that were not alleged.  Id.  Further, conclusory allegations are not accepted as true.  Gersten v. Rundle, 833 F. Supp. 906,

910 (S.D. Fla. 1993)(citing <u>Assoc. Builders, Inc. v. Alabama Power Co.</u>, 505 F.2d 97,

100 (5th Cir. 1974)).

While the law favors resolution of cases on their merits after full litigation,

dismissal is mandated where the defendant can show that the law plainly precludes

the relief that is sought or precludes the plaintiff from obtaining the relief that is sought:

the former being preclusion based on the content of the law raised as grounds for the

relief; the latter being preclusion due to the plaintiff's lack of standing as the putative

recipient of said relief.   Even if the law permits the type of action to proceed and

permits the plaintiff to proceed, the complaint must allege sufficient facts to place the

defendant on notice of the claim being asserted and permit a reasoned response.

With respect to general allegations of liability this standard is slight; however, where

fraud is alleged, the underlying facts must be pled with particularity and the complaint

must include:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) the time and place of each statement and the person responsible for making, or not making, the same, and
>
> (3) the content of such statements and the manner in which they misled the plaintiff, and
>
> (4) what the defendants obtained as a consequence of the fraud.

<u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1371 (11th Cir. 1997).

Finally, if an action is dismissed it should generally be dismissed without

prejudice unless it is so clearly established that the plaintiff cannot, with leave to

6

amend, cure the legal defects that warranted the dismissal.  Stevens v. Premier Cruises, Inc., 215 F.3d 1237, 1239-40 (11th Cir. 2000).  A district court ordinarily "must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect."  Id.  Leave to amend, however, "need not be granted where amendment would be futile."  Id.

## IV.    DISCUSSION

### Downing and Associates Technical Analysis

As an initial matter, the Undersigned finds that the Receiver has failed to meet its burden to show that DATA has standing to pursue its claims.  As noted, in its March 27, 2007, order, the District Judge concluded that the entities that were incorporated would not be dismissed on the motions to dismiss.  The Court stated, however, that DATA could remain a party to this action only if the Receiver "can plead facts, *in good faith*, showing that DATA was a separate legal entity that was injured by disbursements of its funds for unauthorized purposes . . . ."  See, e.g., Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 63 at 15 (emphasis added).  Defendants contend the Receiver has failed to make such allegations in the amended complaints as instructed in the Court's order.

The vague allegations in the amended complaints obfuscate the status of DATA.  Parsing through the amended complaints and accepting as true the nebulous descriptions concerning DATA, one can glean the following: (1) "Waxenberg created, managed and controlled DATA;" (2) through DATA, Waxenberg "raised money from

7

investors for an 'investment fund' he purported to manage through DATA," and "offered for sale and sold 'units' or interests, in the investment fund to various investors;" (3) Waxenberg ceased using DATA in late 2002/early 2003 and began to perpetrate his scheme "through Howard Waxenberg Trading, LLC rather than through DATA;" and, (4) Howard Waxenberg Trading, LLC was the successor in interest to DATA. It is not alleged that DATA ever enjoyed any corporate legal status. Thus, from the amended complaints the Court was left to wonder what DATA's legal status was other than a fictitious name for Howard Waxenberg.

The Receiver gratuitously answers this question in the response to the Motions to Dismiss. In his memorandum, the Receiver concedes DATA was a sole proprietorship prior to the incorporation of Howard Waxenberg Trading, LLC. (Pl. Mem. 29) In his memorandum, the Receiver further acknowledges that "*a sole proprietorship of a perpetrator of a fraudulent scheme may not assert a claim based on that scheme because it is considered the alter ego of the perpetrator. . . .*" (Pl. Mem. 27) (emphasis added). The Receiver is correct; a sole proprietorship is not legally distinct from its sole proprietor, in this case, Howard Waxenberg. See, e.g., Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala. 1999) (stating the general proposition that "an individual owner may in general represent a sole proprietorship, for a sole proprietorship and its owner are essentially one and the same"); Masonoff v. State, 546 So. 2d 72, 73-75 (Fla. 2d DCA 1989) (holding that a sole proprietor could not violate the state's RICO statute by committing unlawful acts under the name of a

sole proprietorship because they were not "sufficiently separate" entities"); Black's Law Dictionary 653 (7th ed. 2001) (a sole proprietorship is "a business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity"). Thus, the Receiver effectively concedes as a general matter that DATA, a sole proprietorship, has no standing to pursue claims to recover funds transferred in Waxenberg's scheme in its own right.  See Troelstrup v. Index Futures Group, Inc., 130 F.3d 1274, 1277-78 (7th Cir. 1997) (differentiating cases like Scholes v. Lehmann ("Scholes"), 56 F.3d 750 (7th Cir. 1995) where there were entities with legal rights from cases where the enterprise has no legal identity apart from the defrauding party.  The court found the receiver did not have standing to sue on behalf of the non-corporate enterprise with no identity distinct from the perpetrator).  This effectively ends the inquiry of whether DATA may pursue any claims to recover for losses it claims it sustained in the Ponzi scheme that it, through its sole proprietor Waxenberg, perpetrated. By law it cannot.

Nevertheless, the Receiver alleges in the amended complaints that Howard Waxenberg Trading, LLC is the successor in interest to DATA. He contends therefore that "once the sole proprietorship is absorbed by a successor in interest that the law views as a separate entity with rights and duties, like Howard Waxenberg Trading, [LLC] and a receiver is appointed, those [alter ago] concerns vanish because the successor entity is separate from the perpetrator and the perpetrator can no longer benefit from any recovery by the entity." (Pl. Mem. 27)  The Receiver cites no case which has so held.  Rather, the Receiver relies on an extrapolation he urges of the

9

Seventh Circuit's decision in <u>Scholes</u>, to support his argument.   In essence, the Receiver urges the Court to extend the logic of the <u>Scholes</u> decision  and apply a two-step analysis to create standing in a sole proprietorship to recover funds transferred by its sole proprietor/perpetrator to others in a Ponzi scheme.   Specifically, the Receiver contends: (1) Howard Waxenberg Trading, LLC was cleansed in 2005 once the Receiver was appointed and in 2006 when he was reappointed and (2) the corporate cleansing of Howard Waxenberg Trading, LLC somehow applied retroactively to cleanse the actions of DATA which predated the 2000 incorporation of Howard Waxenberg Trading, LLC based upon the claimed "merger" of DATA into Howard Waxenberg Trading, LLC.  The second of these steps is untenable and would require the Court to expand the <u>Scholes</u> decision beyond its already elastic bounds.

In fact, in <u>Scholes</u>, the court expressly stated that it did not need to consider whether the receiver could pursue claims on behalf of a sole proprietorship.  <u>See Scholes</u>, 56 F.3d at 754-55.  The perpetrator in that case did not operate through a sole proprietorship; rather, he operated "through corporations or other legally distinct entities."  <u>Id.</u>  The court went on to note that it could "<u>find no cases in which a receiver for a sole proprietorship recovered a fraudulent conveyance</u>."  <u>Scholes</u>, 56 F.3d at 755.  Similarly, neither the Receiver in this case nor the Undersigned has been able to find such a case.

Even if the Court accepted the Receiver's argument that the <u>Scholes</u> decision permitted vicarious, retroactive cleansing of the sole proprietorship, the Receiver concedes this would only occur if and when the sole proprietorship folded into the

10

corporation.  In that event, based on the Receiver's assertions, the Receiver's only recourse would be to sue as the receiver for Howard Waxenberg Trading, LLC, not as the receiver for DATA.[3]  Thus, DATA would still not be a proper party to this action and its "losses" predating the merger could not be claimed because it would not have been separate and distinct from the perpetrator prior to any merger.  See Troelstrup, 130 F.3d at 1277-78.

In sum, the Receiver concedes that DATA, as a sole proprietorship, could not pursue a claim in its own right to recover funds transferred from DATA in Waxenberg's scheme since DATA is not legally distinct from Waxenberg.  As the alleged successor in interest to DATA, neither Howard Waxenberg Trading, LLC nor its Receiver could have acquired rights to pursue claims on behalf of DATA that DATA did not possess in its own right.  Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that the claims brought on behalf of DATA against Defendants be **DISMISSED with prejudice**.  The Undersigned further **REPORTS** and **RECOMMENDS** that the Receiver be precluded from asserting claims to recover through Howard Waxenberg Trading, LLC losses sustained or transfers made from DATA.

Finally, Defendants seek dismissal of Howard Waxenberg Trading, LLC contending that if it is the successor in interest to DATA, it too should be dismissed as

---

[3]

According to the Receiver, "[o]nce the sole proprietorship is absorbed by a successor in interest that the law views as a separate entity with rights and duties, like Howard Waxenberg Trading, and a receiver is appointed, those [alter ago] concerns vanish because the successor entity is separate from the perpetrator and the perpetrator can no longer benefit from any *recovery by the entity*."  (Pl. Mem. 27) (emphasis added)

11

not legally distinct from Howard Waxenberg.   In the amended complaints, the Receiver alleged that Howard Waxenberg Trading, LLC was the successor in interest to DATA and that it was incorporated in the state of California in 2000.   In his global response to the Motions, the Receiver contends Howard Waxenberg Trading, LLC continued DATA's business, i.e., Howard Waxenberg Trading, LLC was "merely a 'continuation or reincarnation'" of DATA with a different name.   (Pl. Mem. 29)   The Receiver makes this argument to support the contention that Howard Waxenberg Trading, LLC should be permitted to recover DATA's transfers.

On the basis of the District Judge's previous order, the Undersigned leaves undisturbed the Court's finding that the Receiver has properly alleged standing to pursue any valid claims, if there are any, on behalf of Howard Waxenberg Trading, LLC.  The Undersigned acknowledges the apparent inconsistency with the Receiver's allegations that Howard Waxenberg Trading, LLC is distinct and his allegations that Howard Waxenberg Trading, LLC is the successor in interest to DATA, i.e., essentially DATA reincarnated.  If that is the case, it may very well be that on summary judgment or at trial the claims by Howard Waxenberg Trading, LLC may be subject to dismissal. However, viewing the amended complaints in the light most favorable to the Receiver, the Undersigned accepts the Receiver's allegations that Howard Waxenberg Trading, LLC is a distinct corporate entity formed in the state of California in 2000.  See, e.g., Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 63 at 4-5.   Thus, the Undersigned **REPORTS** and **RECOMMENDS** that Defendants' Motions to Dismiss Howard

Waxenberg Trading, LLC as a party be **DENIED**.

## Florida Uniform Fraudulent Transfers Act

**Whether the Receiver has stated claims under FUFTA in the amended complaints.**

With respect to whether the Receiver has stated FUFTA causes of action in the amended complaints, Defendants first contend the Receiver has failed to state claims under FUFTA in the amended complaints because he has failed to allege that the Receivership Entities are creditors within the meaning of the statute.  Secondly, Defendants assert that even if the Court accepts that the Receivership Entities are creditors, the FUFTA claims should not proceed because the assets the Receiver seeks to recover were assets that the Receiver expressly alleged belonged to the creditors themselves and not the debtor as required by the statute.  In response, the Receiver contends he has sufficiently alleged in the amended complaints that the Receivership Entities are creditors of Waxenberg because they have claims against Waxenberg for the transfer of their assets.  The Receiver also contends in his responsive memorandum that Waxenberg, as the debtor, acquired sufficient interest in the funds that belonged primarily to the Receivership Entities such that the funds could also be considered to be his assets under FUFTA.  The latter is a contention that is not alleged in a majority of the amended complaints.

The Florida Uniform Fraudulent Transfers Act is not a catchall statute to permit an entity which has transferred its assets to others or had them stolen to recover those assets from whomever may be in possession of them as a substitute for a direct cause

13

of action against that person or entity.   As expressed by the Undersigned in the previous report and recommendation, FUFTA was promulgated to prevent an insolvent debtor from transferring <u>its</u> assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors.  <u>See</u> Fla. Stat. § 726.105(1) (2006).   Put simply, if a creditor has a claim, has brought a claim or evinced an intent to bring a claim, the debtor cannot vitiate the claim by secreting assets available to satisfy the claim.  Thus, the statute provides that any transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation to hinder or defraud the creditor or without receiving "reasonably equivalent value in exchange for the transfer or obligation."  <u>Id.</u>  Pursuant to the statute, for a cause of action to exist, the creditor-plaintiff must allege (1) there was a creditor sought to be defrauded, (2) a debtor intending fraud, and (3) a conveyance of property which could have been available to satisfy the debt due. <u>Nationsbank, N.A. v. Coastal Utils. Inc.</u>, 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002); <u>see</u>, <u>e.g.</u>, <u>Waxenberg</u>, 8:05-cv-1856-T-27MSS, Dkt. 53 at 16-17.

FUFTA defines a creditor as someone who has a claim against a debtor.  Fla. Stat. § 726.102(4) (2006).  The term "claim" is interpreted broadly and means a right to payment, whether or not it is reduced to judgment.  <u>Friedman v. Heart Institute of Port St. Lucie</u>, 863 So. 2d 189, 191 (Fla. 2003).  A debtor is the person liable on the claim to the creditor.  § 726.102(6).  Significantly, an asset is defined in the statute as "<u>the property of the debtor</u>."  § 726.102(2).  A transfer means "every mode, direct or

14

indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with *an asset or interest in an asset . . . .*" § 726.102(12).

FUFTA claims are only permissible when the <u>factual</u> <u>allegations</u> in the complaint meet the elements of the statute.  In the amended complaints, the Receiver has alleged that Waxenberg is the "debtor" and the Receivership Entities are Waxenberg's "creditors" because they have "claims" against Waxenberg.  To establish creditor status, the Receiver has alleged that the Receivership Entities have potential claims against Waxenberg for breach of fiduciary duty, fraud and conversion for the wrongful transfer of their assets caused by him while he controlled the Entities.  Thus, the Receiver contends he has sufficiently alleged that the Receivership Entities are "creditors" of Waxenberg under the statute. The Receiver, however, asks the Court to permit him to proceed on his FUFTA claims simply because the Receivership Entities meet the definition of the term "creditor" without regard to the other prerequisites of the FUFTA statute.  In fact, now that the Receiver has clearly articulated his legal conclusion as to the creditor and debtor relationship in the amended complaints, the failure of most of the FUFTA claims is evident.

As noted, FUFTA was expressly promulgated to permit a creditor to recapture <u>assets</u> of the <u>debtor</u> that the debtor has attempted to place out of the creditor's reach to avoid liability on the debt that is owed by the debtor to the creditor.  The asset that is subject to recapture under FUFTA is clearly defined in the statute as "the property of the debtor."  Fla. Stat. § 726.102(2).  The Receiver has alleged unequivocally in

most instances that the assets transferred and sought to be recaptured were those of the Receivership Entities.[4] In fact, the Receiver relied on the assertion that the assets belonged to the Receivership Entities for the purposes of urging successfully to the District Judge the injury necessary to allege constitutional standing.

Despite that previous assertion, the Court's reliance on it, and the clear allegations in the amended complaints, in the opposition memorandum the Receiver does not challenge the requirement but now contends all of the assets belonged to Waxenberg for FUFTA purposes.  In essence, the Receiver contends because the debtor, Waxenberg, exercised control over the assets in the nanosecond of time during which the transfers to investors occurred, he had a sufficient interest in the assets such that they became the "property of the debtor" for purposes of FUFTA (and to preserve his standing argument, simultaneously remained property of the Receivership Entities).  Notably, this is not what the Receiver has alleged in a majority of the amended complaints.  As stated above, in the amended complaints, the Receiver alleged in most instances that the assets belonged to the Receivership Entities.  Further, the cases cited by the Receiver in support of his position are inapposite.

First, the Receiver cites a bankruptcy case from Colorado, In re M&L Bus. Mach.

---

[4]

In the second amended complaint against Mrs. Waxenberg, the Receiver has alleged that "Waxenberg wrongfully caused the Receivership Entities to transfer money . . . to him as a conduit for its subsequent transfer to family members and others for their personal and other expenses."  Waxenberg, 8:05-cv-1856-T-27MSS, Dkt.  65 ¶82.  The Undersigned concludes herein, and the Receiver has alleged, that Waxenberg actually took possessory interest in the funds the Receivership Entities transferred to him and he subsequently transferred out to Mrs.  Waxenberg at the time of the subsequent transfer.  See discussion infra at 24.

Co., 160 B.R. 851 (Bankr. D. Colo. 1993), to support his position that the assets belonged to Waxenberg at the time of the transfers.  At issue in In re M&L Bus. Mach. Co., was whether a bankrupt debtor entity possessed an interest in money it transferred to a defendant which money it obtained from defrauded victims in a Ponzi scheme.  Id. at 856.   The defendant asserted that the bankruptcy trustee, as a creditor of the bankrupt debtor entity, could not recover the transferred funds because the money was never the property of the debtor entity since it was obtained by theft from defrauded victims.  Id.  The court disagreed and determined that *because the investors gave their money to the debtor entity voluntarily for investment purposes, at the time of each investment the debtor "had at least the legal right to possession."*    Id. at 857.  Therefore, the court determined the debtor entity had an interest in the property such that the bankruptcy trustee/judicial lien creditor could recover the transferred funds from the defendant.  Id.

The only proposition for which In re M&L Bus. Mach. Co. stands is the unremarkable one that the Receivership Entities have a possessory interest in Ponzi scheme investors' assets even though the funds were effectively stolen via fraud from the investors.  It does not speak to whether the individual perpetrator of the fraud owned or had a personal possessory interest in the funds in the nanosecond in which the funds were subsequently ordered by him to be transferred from the Receivership Entities to a majority of the Defendant investors.

Further, in this regard,  In re M&L Bus. Mach. Co. highlights the importance of

the status given to a bankruptcy trustee.  In their positions, trustees in bankruptcy are deemed "creditors" of the entities themselves and the entities are the "debtors."  This is so because the trustee acts on behalf of creditors of the bankrupt entity. Thus, the trustee need not rely on the entities being creditors of the Ponzi scheme perpetrators. As a result, the initial transfer by the bankrupt entity is a transfer by the debtors of the debtors' assets.  As such, a *creditor* of the bankrupt entity, such as the investors, or a trustee designated as a judicial lien creditor by the bankruptcy statute, could recover the funds held by the so-called successful investors because the funds had been diverted by the <u>entity</u> to avoid the creditors' (trustee's or unsuccessful investors') claims.  In the case before this Court, this posture could only exist if the Receiver were pursuing claims for the unsuccessful investors, which he cannot, <u>Freeman v. Dean Witter Reynolds, Inc.</u>, 865 So. 2d 543, 550 (Fla. 2d DCA 2003); <u>Goldberg v. Chong</u>, No. 07-20931-Civ, 2007 WL 2028792, at *4 (S.D. Fla. July 11, 2007), or if the Receivership Entities had been brought into bankruptcy so that the status of  judicial lien creditor could be conferred upon the Receiver, which they have not.  <u>See</u> 11 U.S.C. § 544; <u>see</u>, <u>e.g.</u>, <u>Waxenberg</u>, 8:05-cv-1856-T-27MSS, Dkt. 53 at 18-19.

The remaining cases relied on by the Receiver to support his contention that he should be able to pursue his FUFTA claims are also distinguishable. In fact, the cases support Defendants' assertions and the language of the FUFTA statute that to maintain a FUFTA claim the assets transferred must be assets of the debtor.  The Receiver relies on what he contends is an analogous factual situation in <u>Dillon v. Axxsys Int'l,</u>

Inc., 185 Fed. Appx. 823 (11th Cir. 2006), to support his position that a FUFTA claim can stand when the assets of creditor corporations are transferred from the corporation by the perpetrators of a fraud.

In Dillon, the plaintiffs/investors brought a FUFTA claim against the principals of a sham corporation and its affiliate to recover funds diverted from the corporation. Dillon, 8:98-cv-2237-T-23TGW, Dkt. 225 (M.D. Fla. May 7, 2003), https://ecf.flmd. uscourts.gov.   As an initial matter, the Undersigned notes that the factual circumstances in Dillon were distinguishable from the facts in this case. Specifically, the corporation involved in Dillon was not in receivership, the sham corporation was the alleged debtor in that complaint; and the assets transferred to the perpetrators were alleged by plaintiffs to have belonged to the sham corporation/debtor.  Id. at ¶ 27, 55, 62, 142, 150.  The facts in Dillon support the notion that the assets transferred and therefore sought to be recovered in a FUFTA claim must be assets of the debtor.

Additionally, the funds diverted from the sham corporation in Dillon were transferred to the perpetrators' personal bank accounts.  Thus, the jury found the principals/perpetrators liable as transferees, that is, for receiving fraudulently transferred funds from the sham corporation.  The Receiver contends this fact is inconsequential because the jury also found the perpetrators liable as transferors of the sham corporation's assets.  Specifically, the Receiver suggests that the Eleventh Circuit in Dillon concluded that "individuals who owned and controlled a 'hoax' company used to perpetrate a fraud were debtors who transferred assets covered by

19

FUFTA when they transferred money invested *in the company*." (Pl. Mem. 10)  The Receiver's assertion that the principals in Dillon were found by the jury to be liable as "transferors" is incorrect.  Although there is some language in the Dillon case which indicates that the jury found the principals liable for "transferring assets," a review of the record explains that dicta more clearly.  Dillon, 185 Fed. Appx. at 829.

The plaintiffs in Dillon did not pursue FUFTA claims against the principals for transferring funds.  The principals were being sued and were found liable as the "transferees" of the sham corporation's assets or "as the person[s] for whose benefit the transfers were made."  Dillon, 8:98-cv-2237-T-23TGW, Dkts. 225, 338.  The Court in Dillon noted that the plaintiffs, as shareholders, became creditors of the principals when the corporation's funds were transferred from the corporation to the principals' personal bank accounts.  Dillon, 185 Fed. Appx. at 830.  As shareholders in the corporation, the Court found that the plaintiffs had a right to expect that their investment would be used for proper business purposes.  Id.  Once the principals "decided to use the plaintiffs' money for non-business purposes [i.e., transferring assets to their own account], the plaintiffs became creditors and possessed a viable claim according to the FUFTA." Id.

Similarly, the court 's decision in Southmark Corp. v. Cagan, 999 F.2d 216 (7th Cir. 1993) does not support the Receiver's contentions.  In fact, the court addressed briefly the issue of whether the assets transferred under the Arkansas fraudulent transfer statute must be those of the debtor to maintain a claim under the statute and

20

its conclusion lends support for Defendants' contentions herein that assets must be assets of the debtor. The Southmark court first addressed the issue of whether a receiver for partnerships/investors in real property had standing to pursue claims on behalf of the partnerships under Arkansas law. One of the issues considered by the court was whether the assets belonged to the corporate entity or the wrongdoing principals. The plaintiff (Southmark) contended the partners could not be creditors of the corporate entity (Equity) because the partners gave their money to the wrongdoing principals (Gordon and Boula) and not Equity directly. Southmark, 999 F.2d at 222. The court noted that the evidence was "ambiguous on the question of whether partners wrote checks to Gordon or Boula, to a bank, or to Equity." Id.

In any event, the court found there were factual disputes concerning whether the funds were given to Equity and noted that implicit in an affidavit that stated Equity was "'funded by'" the partners was the suggestion that the partners gave their money to Equity. Id. While the court acknowledged this language was not conclusive, the court found that the language did not foreclose the possibility that the partners had claims against Equity. Id. In short, the court noted that the possibility that the transferred assets belonged to the debtor corporate entity/Equity precluded summary judgment. The court ultimately found that the receiver for the creditors/partners could pursue the partners' fraudulent transfer claims. Id. This conclusion is entirely consistent with the plain language of the FUFTA statute in this case which requires the subject assets to be assets of the debtor.

The receiver in <u>Southmark</u> was also appointed to represent the corporate entity/mortgagor, Equity. The second issue addressed by the court was whether the receiver had standing to pursue Equity's UFTA claim against Southmark/mortgagee for the misappropriation of Equity's funds. <u>Id.</u> at 223. The trial court concluded that the receiver did not have standing because Equity profited from the wrongful conduct. On appeal, the court disagreed and found that the receiver had standing to pursue such a claim because the evidence suggested that Equity had been injured by the looting of its assets by Southmark and Equity's directors. <u>Id.</u> Thus, the UFTA claim by the injured entity was permitted to be pursued against alleged participants in the fraud. Here, the Receiver does not allege that Defendants participated in looting the Receivership Entities or were in any way involved in the act of diverting the Receivership Entities' assets.

The Receiver also points to other cases to demonstrate that there are no cases in which a Receiver has <u>not</u> been able to pursue claims to recover fraudulent transfers. These cases are inapposite because they each present classic UFTA claims in which the creditor sought to regain a debtor's assets from a third party when the assets were wrongfully diverted by the debtor to avoid the creditor's claim. For example, in <u>Goldberg v. Chong</u>, No. 07-20931-Civ, 2007 WL 2028792 (S.D. Fla. July 11, 2007), the court determined that a receiver on behalf of his receivership entity could recover assets from a debtor/defendant under FUFTA. In that case, in an alleged defalcation by its employee, the receivership entity's funds were diverted to a checking account in

the name of the employee's sham corporation.   The receiver for the corporation/
receivership entity pursued FUFTA claims against the employee's sham corporation,
the employee and the employee's spouse to recover fraudulently transferred funds.
Goldberg, 2007 WL 2028792, at *4.  In its amended complaint, the receiver specifically
alleged that the sham corporation acted as a "conduit" for the funds.  Goldberg, 1:07-
cv-20931-PCH, Dkt. 24 ¶ 21(S.D. Fla. Apr. 30, 2007).  That is, the receiver alleged the
funds initially deposited into the sham corporation's account were transferred from the
sham corporation by the employee to other accounts held in the name of the sham
corporation, to the employee and to her spouse for their personal uses.  Id. at ¶ 22.
The court held that the receiver could pursue his FUFTA claims because the
corporation/receivership entity was a "creditor" with a claim against the
defendants/debtors. Goldberg, 2007 WL 2028792, at *4.  Thus, the court permitted a
FUFTA claim by the creditor to recover the debtor's assets, i.e., assets of the sham
corporation, transferred to the transferees, i.e., the sham corporation, the employee
and the employee's spouse.   The claim as alleged in Goldberg is classically
permissible under the statute and is not the type of claim that is alleged by the
Receiver in this case.[5]  See also,Terry v. June, 432 F. Supp. 2d 635 (W.D. Va. 2006);
Quilling v. Grand St. Trust, No. 3:04CV251, 2005 WL 1983879, at *5-6 (W.D.N.C. Aug.

---

[5]

On the issue of standing, the court determined that the receiver could pursue his FUFTA
claims because the corporation/receivership entity was a "creditor" with a claim against the
defendants/debtors. Goldberg, 2007 WL 2028792, at *4.  The issue of standing is not now
in dispute in this case based on the Court's ruling on the initial report and recommendation.

12, 2005).

Thus, to fall within the ambit of the FUFTA statute, the only means by which the Receiver could pursue most of these claims as alleged in the amended complaints would be for the Court to suspend reality and engage in the fiction that Waxenberg owned the assets for the split second of the Receivership Entities' transfers (which has not been alleged in the amended complaints). Alternatively, the Receiver could bring this action in bankruptcy (which he has not) in which case he would be deemed by law a creditor of the Receivership Entities or the Receiver could convince the Court to grant him *de facto* judgment lien creditor status. Bankruptcy trustees are granted the authority by statute to pursue claims as "judicial lien creditors." They are given that status over all assets of the estates over which they preside. 11 U.S.C. § 544. As stated by the Undersigned in the previous report and recommendation, the Receiver has not been afforded this authority by Congress and, thus, must meet the requirements set forth in the FUFTA statute, which in most instances he cannot.

The only exception is in the second amended complaint against Mrs. Waxenberg in which the Receiver has alleged that "Waxenberg wrongfully caused the Receivership Entities to transfer money . . . to him as a conduit for its subsequent transfer to family members and others for their personal and other expenses." Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 65 ¶82. As illustrated in the spreadsheets attached to the amended complaints and incorporated by reference into the complaints , the only Defendant who is alleged to have received funds directly from Waxenberg, the

24

Receivership Entities' alleged debtor, is Mrs. Waxenberg.[6] The Undersigned finds that Waxenberg had an interest in the funds the Receivership Entities transferred to him and that he subsequently transferred out to Mrs. Waxenberg.  To that end, the Receiver is able to pursue FUFTA claims as the Receiver for Howard Waxenberg Trading, LLC, HKW Trading, LLC and HKW Trading Fund I, LLC to recover funds from Mrs. Waxenberg that she received from Waxenberg himself.  The distinct Receivership Entities are alleged to be creditors of Waxenberg and can potentially recover the assets of Waxenberg transferred by him out of their reach.

Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that the Receiver's FUFTA claims against all Defendants except those against Mrs. Waxenberg to recover the transfers she received directly from Waxenberg be **DISMISSED** for the Receiver's failure to state a claim.

<u>Unjust Enrichment</u>

**Whether the Receiver May Pursue Unjust Enrichment Claims on Behalf of the Receivership Entities**

To state a claim for unjust enrichment, a plaintiff must allege that:  (1) a benefit

---

[6]

The Receiver has included the "conduit" language in his amended complaints against other Defendants, e.g., the Dimont Defendants, 8:06-cv-614-T-27MSS, Dkt. 22, ¶78, and Defendant Daniel Vinograd, 8:06-cv-823-T-27MSS, Dkt. 23 ¶ 77.   There is no corresponding allegation on the attached incorporated spreadsheets, however, that these Defendants received transfers from Waxenberg directly.   Both Defendants received transfers from DATA.  The Receiver has alleged that he is pursuing these claims on <u>behalf</u> of DATA as well as the distinct Receivership Entities and that DATA is a creditor of Waxenberg not a debtor of the Receivership Entities.  As set forth above, the Receiver is precluded from asserting claims on DATA's behalf to recover these transfers.

was conferred upon the defendant by the plaintiff, (2) an appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." Hercules, Inc. v. Pages, 814 F. Supp. 79, 80 (M. D. Fla.1993) (citing Henry M. Butler, Inc. v. Trizec Properties, Inc. 524 So. 2d 710, 712 (Fla. 2d DCA 1988)). "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." Bowleg v. Bowe, 502 So. 2d 71, 72 (Fla. 3d DCA 1987).  It is axiomatic that there must be a benefit conferred before unjust enrichment exists.  Henry M. Butler, Inc., 524 So. 2d at 712.

As the Undersigned noted in the previous report and recommendation, "[u]nder an unjust enrichment theory, the Receiver must allege some benefit to Defendants by the Receivership Entities which, if retained, would be inequitable.  To that end, it would presumably be inequitable, in most circumstances, for Defendants to retain money which did not belong to them." See, e.g., Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 53 at 27-28.  In its March 27, 2007, order, the Court determined that "it [was] premature to address the legal merits of the Receiver's unjust enrichment claims on a motion to dismiss." See, e.g., Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 63 at 11.  The more detailed allegations in the amended complaints make the unjust enrichment claims ripe for resolution to some degree on motions to dismiss.

As an initial matter, the Undersigned notes that the Receiver has requested the return of transfers Mrs. Waxenberg received directly from Howard Waxenberg under

26

an unjust enrichment theory. To state a claim for unjust enrichment, the plaintiff must allege that "a benefit was conferred upon the defendant *by the plaintiff*." Hercules, Inc., 814 F. Supp. at 80 (emphasis added). The plaintiff in this case is the Receiver acting on behalf of the Receivership Entities. Howard Waxenberg is not a named plaintiff in this case because, pursuant to the Court's March 2007 order, the Receiver cannot pursue unjust enrichment claims on Waxenberg's behalf. Thus, to the extent the Plaintiff is asserting such claims, the Undersigned recommends that any unjust enrichment claims to recover funds that were conferred upon Mrs. Waxenberg by Howard Waxenberg directly be dismissed.[7] See Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A., 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (affirming the dismissal of an unjust enrichment claim when the plaintiff failed to allege that it had directly conferred a benefit on defendants); see also Tambourine Comerico Int'l, S.A. v. Solowsky, No. 06-20682-Civ, 2007 WL 689466, at *7-8 (S.D. Fla. Mar. 4, 2007) (recommending dismissal of the corporate plaintiffs' unjust enrichment claim where the corporate plaintiffs alleged that a manager of the corporations, not the corporations, conferred a benefit on the defendants) *aff'd by endorsed order,* Tambourine Comerico

---

[7] The spreadsheets incorporated into Mrs. Waxenberg's second amended complaint show a significant number of transfers from Waxenberg directly dating from 1990 through May 2005. While the Receiver has included language in the second amended complaint that Mrs. Waxenberg received transfers "directly or through Waxenberg, from the Receivership Entities," the spreadsheets incorporated into the second amended complaint belie any such assertion. Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 65 at 27. If this language is intended to apply to transfers by Waxenberg before the Receivership Entities came into being, the Receivership Entities clearly could not have conferred any benefit upon Mrs. Waxenberg prior to their formation.

Int'l, S.A. v. Solowsky, No. 1:06-cv-20682-JAL, Dkt. 58 (S.D. Fla. Mar. 21, 2007), http://ecf.flsd.uscourts.gov.

In the amended complaints against the remaining Defendants, the Receiver has pled separate unjust enrichment claims: one for the return of the "false profits" obtained by Defendants, one for the "return of principal" payments received by Defendants and one for the "return of principal" payments Defendants received in excess of their *pro rata* share. The Receiver has also incorporated a spreadsheet into the amended complaints detailing the amount he seeks to recover from each Defendant, the source of the payments and the dates of the transfers.[8] Based on these spreadsheets, it is clear that the Receiver seeks to recover more than the "false profits" certain Defendants received from the Receivership Entities. For instance, the Receiver seeks to recover the "return of principal" from one Defendant, Court Street, LLC, that is, the Defendant's original fraud loss.[9] The Receiver seeks to recover from some of the other Defendants their initial principal payment or fraud loss and/or some amount that is in excess of their unknown *pro rata* share. Relying on the Sixth Circuit's decision in SEC v. George, 426 F.3d 786 (6th Cir. 2005), the Receiver asserts he is entitled to recover these payments because the funds received by Defendants were not actually returns

---

[8]

No spreadsheet was attached to the amended complaint filed against the Estate of Melvin Nessel, Wiand v. Nessel, 8:06-cv-651-T-27MSS, Dkt. 37 (M.D. Fla. April 26, 2007); however, this case has settled since the Motions were filed.

[9]

The Receiver and the other Defendant who received only his principal payment, the Estate of Melvin Nessel, have settled their case.

28

of their principal contributions.  The Receiver alleges that while Defendants may have received an amount equivalent to their initial contributions, the funds distributed to Defendants were taken from a commingled account and included monies the Receivership Entities received from other investors.

The <u>Scholes</u> court expressly rejected this argument.  It refused to permit the receiver to obtain a full disgorgement of investors' repayment, holding that the victims of the fraud are only required to return "<u>the difference between what [was] put in at the beginning and what [was retained] at the end</u>."  <u>See Scholes</u>, 56 F.3d at 757-58.  That difference is the only amount that could be said to be unjustly retained by Defendants. While it may be unjust or unfair as against the so-called "unsuccessful investors" in that the successful investors would receive a greater portion of their initial fraud losses, it is undisputed on this record that the Receiver lacks standing to pursue claims for the other unsuccessful investors/creditors of the Receivership Entities. <u>Freeman</u>, 865 So. 2d at 550.

Further, the Receiver's reliance on the <u>George</u> case is misplaced.  426 F.3d at 798.  In an SEC enforcement action, the SEC pursues claims directly on behalf of creditors of the defrauding entities.  Its role is to collect funds and distribute them on a *pro rata* basis to the victims of the fraud.  In such actions, like in <u>George</u>, the SEC requests disgorgement of the perpetrators/defrauding entities' or overpaid investors' profits for the benefit of all of the creditors for violations of federal securities laws.  The SEC action against Waxenberg and the Receivership Entities initially brought for the

benefit of creditors of the Receivership Entities has long since been resolved.  <u>SEC v.</u> <u>HKW Trading, LLC, et al</u>, 8:05-cv-1076-T-24TBM, Dkts. 81,82 (M.D. Fla. February 22, 2006), http://ecf.flmd.uscourts.gov.  The demands for money damages, including the demands for a civil penalty and disgorgement, were all voluntarily dismissed by the SEC with prejudice.  <u>Id.</u>  The SEC has abandoned any claim it was authorized to assert on behalf of or for the benefit of the creditors.  Accordingly, the Receiver cannot state a claim for unjust enrichment to recover the amount of money originally taken from and subsequently returned to Defendants in this case.  Thus, the Undersigned **REPORTS** and **RECOMMENDS** that the Receiver's unjust enrichment claims to recover transfers Mrs. Waxenberg received from Howard Waxenberg directly be **DISMISSED**.  The Undersigned further **REPORTS** and **RECOMMENDS** that the unjust enrichment claims for the return of principal and the return of principal in excess of some unknown *pro rata* share be **DISMISSED**.

<u>Remaining Arguments Raised by Defendants</u>

**A.     Whether the Receiver has stated claims for the return of Mrs. Waxenberg's home.**

In the second amended complaint against Mrs. Zelda Waxenberg, the Receiver has alleged that transfers from the Receivership Entities were used to purchase and make improvements to real property in Del Mar, California.  According to the second amended complaint, the Del Mar house is in the name of the Zelda Waxenberg Family Trust and is in the possession of Mrs.  Waxenberg, as Trustee.  The Receiver seeks

title to the Del Mar house and, to that end, asserts claims for a declaratory judgment under 28 U.S.C. § 2201 (Count VII) and unjust enrichment (Count VIII). The Receiver also asserts separate claims to place a constructive trust on the home for the benefit of the Receiver (Count IX) and an equitable lien on the home for the amount of the transfers made to purchase and make improvements on the home (Count X).

In her Motion, Mrs. Waxenberg first contends Count VIII, the Receiver's unjust enrichment claim related to the Del Mar house, is duplicative of Count VI, the Receiver's unjust enrichment claim by which he seeks to recover "other transfers" made from the Receivership Entities and Howard Waxenberg.  The Receiver seeks to recover $1,869,152.23 in "other transfers" which were allegedly used by Mrs. Waxenberg for personal and household purposes.[10]  The total amount sought includes a $200,000 transfer made from DATA on February 23, 1993, in connection with the purchase of the Del Mar house. See Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 65 ¶86. The Receiver contends Count VIII is not duplicative of Count VI because Count VIII deals solely with a $275,412 transfer that was made by DATA on November 15, 1994, for the purchase of the Del Mar house. See Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 65 ¶87.  The transfer is not included in the $1,869,152.23 sought by the Receiver in Count VI.

As set forth above, the Undersigned has recommended that the Receiver be

---

[10]

The Undersigned has recommended that the Receiver be precluded from asserting an unjust enrichment claim to recover any portion of this amount that includes transfers from Waxenberg directly.  See discussion *supra* at 30.

precluded from asserting claims as Receiver for DATA to recover transfers from DATA because DATA is not a legally distinct entity with standing to pursue claims.[11] Consistent with that recommendation, the Undersigned finds that the Receiver's unjust enrichment claim brought as Receiver for DATA to recover the November 15, 1994, transfer by DATA of $275,412, which is the sole basis for Count VIII, is also precluded based on the allegations in the second amended complaint.

Mrs. Waxenberg also contends Counts VII, IX and X are duplicative unjust enrichment claims and do not state independent causes of action.  Mrs. Waxenberg contends, and the Receiver concedes, that the Receiver's requests for a declaratory judgment, a constructive trust and an equitable lien are not separate claims, but are alternative remedies based on the Receiver's unjust enrichment claim.  (Pl. Mem. 32, 33) Consistent with the Court's previous dismissal of the Receiver's  "disgorgement claim," these remedies are not independent causes of action and should likewise be dismissed.  Thus, the Undersigned **REPORTS** and **RECOMMENDS** that the Receiver's independent claims for declaratory judgment (Count VII), constructive trust (Count IX) and equitable lien (Count X) be **DISMISSED with prejudice**.  The Undersigned further **REPORTS** and **RECOMMENDS** that the Receiver's unjust enrichment claim brought as Receiver for DATA for DATA's transfer of $275,412 related to the Del Mar house (Count VIII) be **DISMISSED**.

---

[11] Specifically, the Undersigned has already concluded that the portions of the $1.8 million that consist of transfers made by DATA should be dismissed.  See discussion *supra* at 11.

**B.    Whether the Receiver is barred by the applicable statute of limitations from recovering certain transfers.**

Defendants next contend that, pursuant to Sections 726.110 of the Florida Statutes, the Receiver's claims that have been brought more than four years after the transfers are time barred.  Additionally, Defendants contend the Receiver's unjust enrichment claim is barred by the four year statute of limitations set forth in Section 95.11(3) of the Florida Statutes.  In response, the Receiver contends the acts of fraud alleged in the Ponzi scheme were continuing in nature and, thus, the statute of limitations did not begin to run until the date of the last fraudulent transfer or when the Receiver reasonably should have known of the fraud (i.e., after Waxenberg's death). Alternatively, the Receiver contends the statute of limitations should be tolled in these cases as they have "extraordinary circumstances" warranting equitable tolling.

The Undersigned has recommended that the Receiver's fraudulent transfer claims with respect to all Defendants except Mrs. Waxenberg be dismissed.  While Mrs. Waxenberg does not raise a statute of limitations argument in her Motion, she does incorporate all legal arguments raised by the other Defendants.  Thus, the Undersigned will first address the statute of limitations issue with respect to the fraudulent transfer claims against Mrs. Waxenberg.  The Receiver has pled his FUFTA claims under both Sections 726.105(1)(a) and 726.105(1)(b) of the statute.

<u>FUFTA Causes of Action Under Section 726.105(1)(a)</u>

To the extent that the Receiver is pursuing his claims under Section 726.105(1)(a), the Undersigned finds that the allegations in the second amended

33

complaint do not affirmatively show that the Receiver's remaining FUFTA claims against Mrs. Waxenberg are time barred.  Section 726.110 of the Florida Statutes states that a cause of action to recover a fraudulent transfer under Section 726.105(1)(a) is extinguished unless it is brought "within [four] years after the transfer was made or the obligation incurred or, if later, within [one] year after the transfer or obligation was or could reasonably have been discovered" by the plaintiff.[12]  Fla. Stat. § 726.110(1) (2006).  This provision has been deemed to be a statute of limitations to which equitable doctrines may be applied.  See In re Hill, 332 B.R. 835, 841 (Bankr. M.D. Fla.  2005) ("In providing that an action is extinguished unless brought within one year after the transfer was or could reasonably have been discovered, § 726.110(1) does not cut off the right of action after a specified time measured from the date of the transfer, but establishes a period within which an action shall be brought.   Under Florida law, § 726.110(1) is therefore a statute of limitation, . . . rather than a statute of repose and equitable doctrines are applicable").

The initial complaint against Mrs. Waxenberg was filed on October 6, 2005.  The

---

[12]

The difference in the two FUFTA provisions is the standard of proof of intent required to prove a claim.  For example, Section 726.105(1)(a) states that:

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . (a) with the actual intent to hinder, delay, or defraud any creditor of the debtor.

Fla.  Stat. § 726.105(1)(a) (2006) (emphasis added); Cf § 726.105(1)(b) infra at n.13.

34

Receiver's Section 726.105(1)(a) claims against her to recover transfers after October 6, 2001, would, therefore, fall within the four year statutory period for commencing these actions.  Whether the claims to recover transfers that occurred prior to October 6, 2001, are time barred requires a determination of whether the Receiver's actions were commenced within one year of when the claims were discovered or could have been discovered with diligence.

In holding that the doctrine of *in pari delicto* did not bar the Receiver's FUFTA's claims if properly pled, the District Judge has, at least for purposes of the Motions to Dismiss, accepted the proposition set forth in Scholes that the wrong of the perpetrator may not be imputed to the legally distinct Receivership Entities once the Receiver was appointed.  See, e.g., Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 63 at 12-13.  The Receiver has asked the Court to likewise conclude that any knowledge the Receivership Entities had of the fraud may not be imputed to him for statute of limitations purposes.  See, e.g., Quilling v. Cristell, No. Civ.A. 304CV252, 2006 WL 316981, at *6 (W.D.N.C. Feb. 9, 2006) (holding that fraudulent transfers were concealed and could not reasonably be discovered while the corporations remained under the control of the wrongdoer.  The transfers only became discoverable when the receiver was appointed).  Under the holding of the District Judge, the Undersigned finds that as pled the second amended complaint is not subject to dismissal on a motion to dismiss as the Receiver may be able to prove that the one year statute of limitations period began to run on the date *the Receiver*, not the Receivership Entities,

discovered or could have discovered the transfers.   Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that, to the extent the Court adopts the holding in Scholes, the Receiver should be permitted to pursue his FUFTA claims brought under Section 726.105(1)(a) against Mrs. Waxenberg based on the allegations in the second amended complaint.

<u>FUFTA Causes of Action Under Section 726.105(1)(b)</u>

To the extent that the Receiver is pursuing his FUFTA claims against Mrs. Waxenberg under Section 726.105(1)(b), the Receiver is precluded from asserting claims to recover any such transfers made more than four years prior to bringing those actions.[13]  A cause of action under Section 726.105(1)(b) is "extinguished" if the plaintiff does not commence the action within four years of the transfer.   § 726.110(2).  This provision does not include the "savings" clause contained within the statute of

---

[13]
Section 726.105(1)(b) states that:

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . (b) <u>without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:</u>
>
> > 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla.  Stat. § 726.105(1)(b) (2006) (emphasis added).

limitations for causes of action brought under Section 726.105(1)(a) permitting a cause of action to be commenced within one year of the plaintiff's discovery.  Thus, no considerations of actual or constructive knowledge are relevant to this analysis.  A well settled principle of statutory construction provides that when the legislature has included a specific provision in one part of the statute and omitted it in another part of the same statute, the Court must assume the omission was intentional.  See, e.g., Parragon Health Servs., Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr., 859 So. 2d 1233, 1235-36 (Fla. 4th DCA 2003) (holding that a cause of action under Section 726.106(2) was extinguished one year after the date of the transfer because the one year discovery provision in Section 726.110(1) does not apply to Section 726.110(3)).

Finally, a consideration of extraordinary circumstances for equitable tolling purposes is likewise not appropriately engrafted onto the statute for claims brought under Section 726.105(1)(b). See In re Bendetti, 131 Fed. Appx 224, 226-27 (11th Cir. 2005) (holding that Section 726.110 barred the trustee's claims to recover the debtor's transfers of real property because they were brought more than four years from the date of the transfers).  Thus, the Undersigned **REPORTS** and **RECOMMENDS** that any claims under 726.105(1)(b) to recover from Mrs. Waxenberg transfers made prior to October 6, 2001, four years before the initial complaint was filed in her case, be precluded as time barred.[14]

---

[14]

The Receiver attempts, without citation to any legal authority in the FUFTA context, to salvage his claims by asserting that the FUFTA claim is not time barred because of the "continuing tort doctrine."  That is, he asserts that his causes of action did not accrue until

<u>Unjust Enrichment Causes of Action</u>

With respect to his unjust enrichment claims, the Receiver contends they are actions "founded upon fraud" and are, therefore, governed by the statute of limitations set forth in Section 95.11(3)(j) of the Florida Statutes.  Section 95.11(3)(j) states that any legal or equitable claim founded upon fraud must commence within four years.  § 95.11(3)(j).  Section 95.031(2)(a) states that any action "founded upon fraud" under Section 95.11(3), including constructive fraud, "must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence."  Fla. Stat. § 95.031(2)(a) (2003).  The Receiver's request that the Court find his unjust enrichment claims to be "founded upon fraud" for purposes of applying the delayed discovery doctrine contained in Section 95.031(2)(a) is contrary to Florida law.

In <u>Davis v. Monahan</u>, 832 So. 2d 708 (Fla. 2002), the Florida Supreme Court expressly found that Section 95.031(2)(a) had no application to unjust enrichment claims.  <u>Id.</u> at 709-10.  At the time of the court's decision in <u>Davis</u>, Section 95.031(2)(a) read "an action *for fraud under* s. 95.11(3)" must be begun within a period commencing

---

the last date of Waxenberg's scheme. However, as the Receiver is aware, by enacting the FUFTA statute the legislature did not create an "independent tort" for damages. <u>Freeman</u>, 865 So. 2d at 1277; <u>Brown v.  Nova Information Sys., Inc.</u>, 903 So. 2d 968, 969 (Fla.  5th DCA 2005) (holding that a fraudulent conveyance claim is not a tort for the purpose of establishing personal jurisdiction under the long-arm statute).  While Waxenberg's actions may have continued, the Receiver may not assert a "continuing tort" theory to maintain his FUFTA claims against Mrs. Waxenberg.

38

on the date when the plaintiff knew or should have known of the facts underlying the fraud. Id.; Fla. Stat. § 95.031(2)(a) (2000). While the legislature has since amended the statute to allow actions "*founded upon fraud under s. 95.11(3), including constructive fraud*" to be commenced within that time period, the legislature did not amend the statute to include any other claim expressly excluded by the Court in Davis. Fla. Stat. § 95.031(2)(a) (2003); Davis, 832 So. 2d at 709-10 ("The Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs. An exception is made for claims of fraud and products liability in which the accrual of the causes of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred. The Legislature has also imposed a delayed discovery rule in cases of professional malpractice, medical malpractice, and intentional torts based on abuse").

While the Receiver has alleged that Waxenberg engaged in fraud as a part of his scheme and that Defendants received transfers as a part of that scheme, the Receiver has not alleged any wrongdoing on the part of Defendants such that an action against them would be "founded upon fraud." Simply intoning the words "Ponzi" scheme does not render every claim against every person impacted by the scheme a claim that is "founded upon fraud." The Receiver's unjust enrichment causes of action have unique and well settled elements of proof that must be alleged and proven. The Receiver need only prove that a benefit was conferred on Defendants by the Receivership Entities and that it would be inequitable for them to retain that benefit

without paying the value thereof.  Neither fraud nor constructive fraud is an element of the claim.  In point of fact, the unjust enrichment causes of action are pled as an alternative to the FUFTA claims.

The Undersigned finds, therefore, that the limitations period set forth in Section 95.11(3)(k) is the governing statute of limitations for the Receiver's unjust enrichment claims.  Section 95.11(3)(k) of the Florida Statutes states that any legal or equitable action on a "contract, obligation, or liability not founded on a written instrument" must commence within four years from the time the cause of action accrued.  Fla. Stat. § 95.11(3)(k) (2006); Fla. Stat. § 95.031(1).  A cause of action accrues "when the last element constituting the cause of action occurs."  § 95.031(1).  A cause of action for unjust enrichment does not accrue until the defendant "knowingly and voluntarily accepts the benefits bestowed upon him."  Fowler v. Towse, 900 F. Supp. 454, 460 (S.D. Fla. 1995). "Florida law does not allow the tolling of statutes of limitation for any reasons other than those specifically enumerated in Fla. Stat. 95.051."[15] See Foxworth

---

[15]

The statute provides that the running of time under any statute of limitations except for those expressly excluded is tolled by:

(a) Absence from the state of the person to be sued.
(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.
(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue.  In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
(e) Voluntary payments by the alleged father of the child in paternity actions

ex rel. Estate of Durden v. Kia Motors Corp., 377 F. Supp. 2d 1196, n.9 (N.D. Fla. 2005); Hearndon v. Graham, 767 So. 2d 1179, 1185 (Fla. 2000) ("the Legislature enumerated specific grounds for tolling limitation periods . . . [and] specifically precludes application of any tolling provision not specifically provided therein.")

As alleged, the Receiver's unjust enrichment claims accrued on the date of the transfers.  Absent meeting one of the criteria set forth in Section 95.051 for tolling the limitation period, the Receivership Entities had four years from the date of the transfers to commence their unjust enrichment actions.   Only two of the exceptions appear to have any possible, albeit improbable, application here: provisions (a) or ( c) of Section 95.051.  No such allegations have been made related to these exceptions.  However, whether the Receiver has met the requirements for statutory tolling is a factual determination not appropriate for resolution on a motion to dismiss.  See New Lenox

---

during the time of the payments.
(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
(g) The pendency of any arbitral proceedings pertaining to a dispute that is the subject of the action.
(h) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11.  In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

Fla. Stat. § 95.051(1) (2007).  The statute further provides that "[n]o disability or other reason shall toll the running of any statute of limitations except those specified in this section, s. 95.091 [Limitation on actions to collect taxes], the Florida Probate Code, or the Florida Guardianship Law."  § 95.051(2).

Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, n.50 (M.D. Fla. 2007) ("[t]he determination of whether there are valid reasons for tolling under Fla. Stat. § 95.051 . . . is not appropriate on a motion to dismiss").   As such, the Undersigned **REPORTS** and **RECOMMENDS** that the Receiver be permitted to pursue his remaining unjust enrichment claims at this time.   The Undersigned further recommends, however, that the Receiver be strongly admonished to dismiss voluntarily as time barred all claims which he has no good faith basis to believe were preserved by one of the tolling exceptions expressly set forth in Section 95.051 of the Florida Statutes.  See Fed. R. Civ. P. 11.

**C.    Whether the Receiver has pled a cause of action against the Defendant Trustees in their individual capacities.**

Certain Defendant Trustees assert that the amended complaints should be dismissed against them in their individual capacities because the Receiver has failed to allege the grounds upon which he claims they are personally liable for funds transferred exclusively to the trusts.[16]   Further, Defendant Trustees contend they cannot be liable individually for contracts they entered into in their fiduciary capacities. In response, the Receiver contends more information is needed for the Receiver to

---

[16] This argument is not raised by the Stevenson Defendant.  The Receiver has differentiated between funds Dr. Stevenson received individually and funds he received as trustee for the Stevenson Family Trust.  Wiand v. Stevenson, 8:06-cv-837-T-27MSS, Dkt. 23 at 19-20 (M.D. Fla.  May 14, 2007).  Additionally, the Receiver has alleged that Mrs. Waxenberg's trust has title to the Del Mar house he seeks to obtain and that Mrs. Waxenberg received transfers directly from her husband which she used for personal and other expenses. Thus, this section does not apply to the second amended complaints filed in those cases.

ascertain who exactly received the transfers.   Further, the Receiver contends the individual Defendants are aware of whether they received the funds as individuals or as trustees.  Therefore, they are able to fully defend the lawsuit.  The Receiver misses the point. Unless he has a good faith basis for a claim, none should be asserted and the mounting of a defense should not be required.

Section 737.306 of the Florida Statutes states unequivocally that "[u]nless otherwise provided in the contract, a trustee is not personally liable on contracts, except contracts for attorney's fees, properly entered into in the trustee's fiduciary capacity in the course of administration of the trust estate unless the trustee fails to reveal that representative capacity and identify the trust estate in the contract."  Fla. Stat. § 737.306(1)(a) (2002).  A trustee is, however, personally liable for obligations arising from the ownership or control of property of the trust estate or for torts he or she personally commits in the course of the administration of the trust estate.  § 737.306(b).

Here, while the Receiver has identified the source of the payments, the Receiver has not included allegations in a majority of the amended complaints that set forth precisely or even generally which transfers, if any, the Defendant Trustees received or benefitted from in their individual capacities.  The Receiver simply lumps the parties together and refers to Defendant Trustees and the individual Defendants throughout the amended complaints as "Defendants," i.e., "Defendants were investors," "False Profits the Defendants received."  As the plaintiff, the Receiver has an obligation to ascertain whether he has a good faith basis to sue an individual, especially one acting

43

in a fiduciary capacity. The Receiver has the full resources of the corporate entities and he has the capacity to discern whether and how funds were transferred to the individuals or to the trusts that the individuals oversaw and to allege the results of what he discovers.  If he has no basis to believe that transactions involved trustees in their individual capacities it is premature to make any such claim against them. One does not sue first then ask questions later.  If facts are revealed later in discovery to support a claim against the trustees individually, the Receiver can seek at that time to amend the complaints to articulate a basis for the claim.

In fact, at the hearing on the Motions, the Receiver agreed to review the transactions at issue in these cases.  (Hr'g Tr. 114, Aug. 23, 2007)  If the Receiver determined that he had no basis to believe that Defendant Trustees received funds in their individual capacities, the Receiver agreed to voluntarily dismiss the individual claims against those Defendants.  On review of the amended complaints, it is not possible for the Defendants to determine which transfers they are being accused of accepting for their personal use.  Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that the Receiver's claims against the Defendant Trustees where he has failed to identify which transactions involved the Trustees in their individual capacities be **DISMISSED without prejudice**.

### D.    Whether the Receiver has pled a cause of action for an accounting.

Defendant Zelda Waxenberg contends the Receiver has failed to plead a cause of action for an equitable accounting.  To state a claim for an equitable accounting, a

plaintiff must show "the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir. 1990). The Receiver has pled that "the complex nature and scope of various Receivership Entities' accounts and the transfers to the Defendant, coupled with the inherently fraudulent intent behind Waxenberg's Ponzi scheme, have left the Receiver with a need for discovery as to other possible transfers made to the Defendant." Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 65 at ¶169. Further, the Receiver has alleged that he "has no adequate remedy at law to obtain that information outside of an accounting." Id. at ¶170. Accepting these allegations as true, the Undersigned **REPORTS** and **RECOMMENDS** that the Court find that the Receiver has adequately alleged a cause of action for an equitable accounting.

### E. Whether the doctrine of unclean hands applies to defeat the Receiver's claims.

The Mitchell Defendant contends the doctrine of unclean hands bars the Receiver's unjust enrichment claim. The doctrine of unclean hands is closely related to the doctrine of *in pari delicto*. See O'Halloran v. PricewaterhouseCoopers, LLP, 969 So. 2d 1039, 1044 n.3 (Fla. 2nd DCA 2007) ("The *in pari delicto* doctrine is a corollary of the doctrine of unclean hands."). The doctrine of *in pari delicto* refers to "'the plaintiff's participation in the same wrong-doing as the defendant.'" Id. at 1044 (quoting Memorex Corp. v. Int'l Bus. Mach. Corp., 555 F.2d 1379, 1382 (9th Cir. 1977)). Under the doctrine of unclean hands "'no one shall be permitted to profit from his own fraud

or wrongdoing, and [ ] one who seeks the aid of equity must do so with clean hands.'" O'Halloran, 969 So. 2d at 1044 (quoting Yost v. Rieve Enters., Inc., 461 So. 2d 178, 184 (Fla. 1st DCA 1984)).

In the previous report and recommendation, the Undersigned recommended that the doctrine of *in pari delicto* be applied to defeat the Receiver's unjust enrichment claims. Specifically, the Undersigned found that the complaints filed in the SEC action and this action clearly included allegations that the Receivership Entities orchestrated the wrongdoing. The Undersigned further noted that no wrongdoing was alleged against the Defendants whose motions were being considered. See, e.g., Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 53 at 29-35 (citing Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1152 (11th Cir. 2006), Knauer v. Jonathon Roberts Fin. Group, No.01-1168-C-K/T, 2002 WL 31431484, at *7-8 (S.D. Ind. Sept. 30, 2002) and Quiller v. Barclay's American/Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984) (stating that a court may dismiss a complaint when an affirmative defense is clear from the face of the complaint)).

In its March 2007 order addressing the *in pari delicto* doctrine in regard to the unjust enrichment claims, the Court determined that even if the doctrine applied to an unjust enrichment claim, the relative fault of the Receiver *vis-a-vis* Defendants was not apparent from the face of the complaint. See, e.g., Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 63 at 13; Freeman, 865 So. 2d at 550 (stating the general proposition that defenses such as unclean hands and *in pari delicto* may not always apply against a

46

receiver even though such defenses might have applied to the receivership entities outside of the receivership).   Because the District Judge has not yet determined whether to apply *in pari delicto* to an unjust enrichment claim and because he is not prepared to apportion the parties' "fault" on a motion to dismiss, the Undersigned **REPORTS** and **RECOMMENDS** that the Court **DENY** the Mitchell Defendant's Motion in this regard without prejudice.

## VII.   MOTION FOR SUMMARY JUDGMENT

**Whether the Levine Defendants' contract defeat claims for unjust enrichment.**

The Levine Defendants contend the Receiver may not pursue his claims for unjust enrichment because the relationship between them and the Receivership Entities was governed by a contract.  In its March 2007 order, the Court noted that the contract cited by the Levine Defendants was not executed and concluded that the existence of a contract was a disputed issue more appropriately resolved on summary judgment.  The Levine Defendants have attached an executed copy of their contract to their Motion to Dismiss.  As the Court considered the contract in resolving this issue, the Court converted the Levine Defendants' Motion to Dismiss to a Motion for Summary Judgment.  See Wiand v. Levine, 8:06-CV-647-T-27MSS, Dkt. 55 (M.D. Fla. Sept. 18, 2007), http://ecf.flmd.uscourts.gov.  The parties were given the opportunity to present evidence supporting their respective positions. Upon consideration of the evidence presented, the Undersigned **REPORTS** and **RECOMMENDS** that the Levine

Defendants' Motion for Summary Judgment be **GRANTED**.[17]

<u>Summary Judgment Standard</u>

A motion for summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324-25 (1986).  Entry of summary judgment is mandated, after adequate time for discovery and upon motion "if the nonmoving party cannot sufficiently show an essential element of the case as to which the nonmoving party has the burden of proof."  <u>Cornelius v. Town of Highland Lake</u>, 880 F.2d 348, 351 (11th Cir. 1989).  Mere allegations of denial are insufficient to meet the burden of opposing summary judgment, and the party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Credibility determinations, the weighing of evidence,

---

[17] In her previous motion to dismiss, the Mitchell Defendant raised a similar argument concerning the existence of her contract barring the Receiver's unjust enrichment claim and attached an executed copy of her contract to her motion.  <u>See</u> <u>Wiand v. Mitchell</u>, 8:06-cv-1085-T-27MSS, Dkts. 10-7 (M.D. Fla. Sept. 5, 2006).  In the Motion presently before the Court, the Mitchell Defendant did not raise this assertion and failed to attach the contract to the Motion.  As such, her present Motion to Dismiss was not converted to a motion for summary judgment.  <u>See</u> <u>Mitchell</u>, 8:06-cv-1085-T-27MSS, Dkt. 27.

and the drawing of inferences from the facts are functions of the jury; therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in the nonmovant's favor. See id. at 248.

## Discussion

As stated above, the Levine Defendants as Trustees for the Harvey and Judy Levine Trust ("the Levine Defendants") contend the Receiver's claims for unjust enrichment fail due to the existence of an express contract governing the relationship between DATA/Waxenberg and the Levine Defendants.  An executed copy of the contract was attached to the Levine Defendants' motion.  Levine, 8:06-cv-647-T-27MSS, Dkt. 45.   The execution of the contract was first illuminated by the Levines when they pointed out that the amended complaint parroted many of the provisions of the contract yet failed to disclose its existence to the Court.  Levine, 8:06-cv-647-T-27MSS, Dkt. 44 at 9-10.  When confronted at the hearing, the Receiver suggested that the contract may have been invalid because the signature of Waxenberg on it may have been invalid. That is the issue that prompted the Court to permit additional evidence to be produced and to convert the Levine Defendants' Motion to a motion for summary judgment on that issue.[18]

---

[18]

Had the Receiver attached the contract to the amended complaints at the onset, the Motion could have been summarily resolved.  As such, the Receiver's reliance on Jones v. Columbus, 120 F.3d 248 (11th Cir. 1997) and its progeny is misplaced.  No expansive discovery is required to resolve a claim under the well settled principle that the existence of a valid contract precludes an unjust enrichment claim.  See Mario v. Centex Homes, No. 8:06-cv-131-T-23, 2006 WL 560150, at*1 (M.D. Fla. Mar. 7, 2006) (dismissing the plaintiff's unjust enrichment claim upon an agreement between the parties that a contract existed);

In any event, the Receiver no longer contests that the signature on the contract belongs to Howard Waxenberg.  Levine, 8:06-cv-647-T-27MSS, Dkt. 58 at 2.  In his memorandum, the Receiver now shifts his challenge to summary judgment to other fronts: he now claims (1) he is entitled to pursue his unjust enrichment claims as an alternative claim despite the existence of the contract, (2) there are issues of material fact concerning whether the contract governs the transfers made by Howard Waxenberg Trading, LLC to the Levine Defendants, the transfers made to the Levine Defendants personally and any transfers made that were "extracontractual," and (3) the Levine Defendants should not be permitted to retain their preference payments.

The Court rejects the Receiver's first contention.  While it is true that under Florida law and federal law, a plaintiff may *plead* alternative claims for unjust enrichment and violations of an express contract, upon a showing that an express contract exists, the equitable claim fails.  See Goldberg, 2007 WL 2028792, at *9; Al-Rayes v. Willingham, 3:06-cv-362-J-33HTS, 2007 WL 430738, at *3 (M.D. Fla. Feb. 5, 2007); Thunderwave, Inc. v. Carnival Corp., 954 F. Supp. 1562, 1565-66 (S.D. Fla. 1997).  Here, the Receiver concedes that he has "no evidence indicating the signature on the purported contract is not Waxenberg's." Levine, 8:06-cv-647-T-27MSS, Dkt. 58 at 2.  Further, he presents no other evidence (as opposed to argument and

---

Shibata v. Lim, 133 F. Supp. 2d 1311, 1316-17 (M.D. Fla. 2000) ("Proof of an express contract between parties to a contract defeats a claim for unjust enrichment"); Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla.  5th DCA 1998) (holding that upon a showing that an express contract exists, an unjust enrichment claim fails).

supposition) to suggest that the contract submitted by the Levine Defendants is invalid or that the Levine Defendants' relationship with DATA and/or Waxenberg was governed by some other agreement. Thus, he has failed to meet his burden on summary judgment in this regard. See Matsushita Elec. Indus. Co., 475 U.S. at 586 (stating that mere allegations of denial are insufficient to meet the burden of opposing summary judgment).

The Receiver's next contentions are likewise unavailing. First, the Receiver contends the contract governed only the transfers made from DATA and the Levine Defendants and not the transfers made from Howard Waxenberg Trading, LLC to the Levine Defendants. The Receiver makes this assertion in his memorandum while simultaneously acknowledging his allegation in the amended complaints that Howard Waxenberg Trading, LLC is the *successor in interest* to DATA. Levine, 8:06-cv-647-T-27MSS, Dkts. 42 at ¶20, 58 at n.3. The Receiver also fails to advise the Court that the contract entered into originally by DATA and the Levine Defendants states explicitly that it is "binding upon the parties hereto, their heirs, respective legal representatives and *successors*." Levine, 8:06-cv-647-T-27MSS, Dkt. 45 ¶ 57. Based on the Receiver's allegations that Howard Waxenberg Trading, LLC is the DATA's successor in interest, the transfers made from Howard Waxenberg Trading, LLC to the Levine Defendants would, therefore, be governed by the contract between DATA and the Levine Defendants.

Next, the Receiver contends there are issues of material fact concerning whether

the Levine Defendants received transfers in their individual capacities. Specifically, counsel for the Receiver in an affidavit contends "it appears" from the face of a $300,000 check that some of the investment funds received by the Receivership Entities may have been drawn from an account held in the names of Harvey and Judy Levine rather than in the name of the Trust. In response, however, Judith Levine has declared that the $300,000 check that she wrote and signed was drawn from a "Schwab One Trust Account for 'The Harvey and Judith Levine Trust U/A DTD 05/02/94.'" Levine, 8:06-cv-647-T-27MSS, Dkt. 61. Mrs. Levine has provided uncontroverted evidence that the checks on that Trust Account "simply do not list the name of the Trust on their face, only [her] name and [her] husband's name, Harvey Levine." Levine, 8:06-cv-647-T-27MSS, Dkt. 61. She has submitted the account statement for the Trust Account showing that the amount of the transfers from the Levine's Trust Accounts corresponds to the check at issue. Thus, the Receiver's argument on this ground fails.[19]

In apparent acknowledgment of the existence of a contract governing the parties' relationship, the Receiver next contends that there are issues of material fact with respect to whether the "return of principal" payments made to the Levine Defendants were governed by paragraphs forty-five or forty-eight of the contract. In pertinent part,

---

[19]

Harvey and Judith Levine are also being sued by the Receiver in their individual capacities for unjust enrichment. The Receiver has failed to support his unjust enrichment claims against the Levines in their individual capacities. Thus, his unjust enrichment claims against them in their individual capacities fail as well.

paragraph forty-five of the contract states that:

> DATA reserves the right to terminate the investment of an investor at anytime upon giving written notice to the Investor. Within five (5) days of said notice all invested capital will be returned to the investor.

Levine, 8:06-CV-647-T-27MSS, Dkt. 45 at ¶ 45.

Paragraph forty-eight states that:

> If at anytime, Mr. Howard K. Waxenberg becomes unable to run the Investment Fund, the Fund will immediately halt trading, be disbanded and funds will be returned to all investors in the fund on a pro rata basis.

Levine, 8:06-CV-647-T-27MSS, Dkt. 45 at ¶ 48.

The Receiver contends the latter provision should control and there is an issue of fact with respect to whether Waxenberg "terminated" the investment or became "unable to run" the investment fund. Alternatively, the Receiver suggests that if the payments were made and received in breach of the contract, they were "extracontractual" and he should be permitted to sue in equity to recover the payments. This too is incorrect. At most, these assertions are reserved for resolution on a claim that could be brought under the contract, but was not. They are not claims to be pursued in equity. Equity does not serve as a "stop gap" claim when available contractual remedies are not preferred. Rather, equity may be resorted to where there is no contract governing the parties' rights and obligations.

Finally, the Receiver contends allowing the Levine Defendants to retain their "preference payments" due to the existence of a contract would be inequitable. However, reliance on the cases cited by the Receiver is misplaced. As the Levine

Defendants correctly point out, the law of bankruptcy and, thus, the cited cases have no application in this action. The Receiver never placed the Receivership Entities in bankruptcy. Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that the Levine Defendants' Motion for Summary Judgment be **GRANTED** with respect to the Receiver's unjust enrichment claims against them.

## VIII.   CONCLUSION

Having reviewed the claims and for the reasons set forth above, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED in part** and **DENIED in part**. Specifically, the Undersigned **RECOMMENDS** that the Court:

DATA and Howard Waxenberg Trading, LLC

1.   **DISMISS with prejudice** all claims brought on behalf of DATA against Defendants, including claims to recover through Howard Waxenberg Trading, LLC losses sustained or transfers made from DATA;

2.   **DENY** Defendants' Motions to Dismiss Howard Waxenberg Trading, LLC as a party;

FUFTA Claims

3.   **DISMISS** the Receiver's FUFTA claims against all Defendants for failure to state a claim, excluding those FUFTA claims brought against Mrs. Waxenberg to recover the transfers she received directly from Howard Waxenberg;

4.   **DENY** Defendant Mrs. Waxenberg's Motion to Dismiss on statute of limitations grounds the Receiver's FUFTA claims brought under Section 726.105(1)(a);

5.   **DISMISS** any of the Receiver's FUFTA claims under 726.105(1)(b) to recover from Mrs. Waxenberg transfers made prior to October 6, 2001;

Unjust Enrichment Claims

6.   **DISMISS** the Receiver's unjust enrichment claims to recover transfers Mrs. Waxenberg received from Howard Waxenberg directly;

7.   **DISMISS** the Receiver's unjust enrichment claims for the "return of principal" and the return of principal in excess of some unknown *pro rata* share.  This would leave only those unjust enrichment claims for the return of funds Defendants received in excess of their payment to the Receivership Entities;

8.   **DENY** Defendants' Motions to Dismiss on statute of limitations grounds the Receiver's unjust enrichment claims, but direct the Receiver to review the claims and withdraw those barred by the applicable statute of limitations;

Claims against Mrs. Waxenberg only

9.   **DISMISS with prejudice** the Receiver's independent claims for declaratory judgment (Count VII), constructive trust (Count IX) and equitable lien (Count X) against Mrs. Waxenberg;

10. **DISMISS** the Receiver's unjust enrichment claim brought on behalf of DATA related to the Del Mar house (Count VIII);

11. **DENY** Mrs. Waxenberg's Motion to Dismiss the equitable accounting claim;

<u>All Claims</u>

12. **DISMISS without prejudice** the Receiver's claims against the Defendant Trustees in their individual capacities other than the Stevenson Defendant and Mrs. Waxenberg; and,

13. **DENY without prejudice** the Mitchell Defendant's Motion that the doctrine of unclean hands bars the Receiver's claims.

Additionally, the Undersigned **REPORTS** and **RECOMMENDS** that the Levine Defendants' Motion for Summary Judgment with respect to the Receiver's unjust enrichment claims be **GRANTED**.

Respectfully **RECOMMENDED** in Tampa, Florida on this 28th day of January 2008.


_____
MARY S. SCRIVEN
United States Magistrate Judge

56

**NOTICE TO PARTIES**

Should any party wish to file written objections to the proposed findings and recommendations contained in this Report, the District Judge has directed that such party must do so on or before **February 11, 2008**.  Failure to do so shall bar an aggrieved party from attacking any factual findings on appeal. See 28 U.S.C. § 636(b)(1).  Any objection by the Receiver shall not exceed **twenty (20) pages**.  To the extent practicable, Defendants are encouraged to consolidate their objections into a single memorandum.  In cases in which a lawyer represents a single Defendant, the Defendant's objections shall not exceed **ten (10) pages**.  In cases in which a lawyer represents multiple Defendants, any objections shall be consolidated into a single memorandum.  The Defendants' consolidated objections shall not exceed **twenty (20) pages**.  Responses to objections must be filed on or before **February 22, 2008**.  All responses to objections shall abide by the same page limits set forth above.

**REQUESTS FOR EXTENSIONS OF TIME OR AN EXTENSION OF THE PAGE LIMIT TO ADDRESS THE REPORT AND RECOMMENDATION WILL BE DISFAVORED. NO REPLIES WILL BE PERMITTED.**

Copies furnished to:

Presiding District Court Judge
Counsel of Record
Unrepresented Parties